UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES R. CROFTON,<br><br>        Plaintiff,<br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>        Defendant. | CIVIL NO. C05-0755-TSZ<br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff appeals to the District Court from a final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. For the reasons set forth below, it is recommended that the Commissioner's decision be REVERSED and this matter REMANDED for further proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for social security disability benefits on December 15, 2000, and an application for SSI benefits on January 10, 2001. He alleges disability beginning December 31, 1993 due to anxiety, attention deficit hyperactivity disorder, sleep disorder, metal fragments in his left hand, and depression. Tr. 29, 96, 134, 524. His applications were denied initially and on

REPORT AND RECOMMENDATION - 1

reconsideration. Tr. 43-46, 49-51. Plaintiff failed to appear for a scheduled hearing, and Administrative Law Judge Richard Hines (hereinafter ALJ Hines) dismissed Plaintiff's request for hearing on May 29, 2002. Tr. 40-43. A timely appeal was filed, and on September 19, 2002, the Appeals Council granted Plaintiff's request for review, vacated ALJ Hines' dismissal order and remanded the case for further proceedings. Tr. 66-68. On remand, ALJ Lee Dethloff (hereinafter ALJ Dethloff) held a hearing on August 26, 2003. Plaintiff, Plaintiff's mother and Medical Expert (ME) Dr. Brubakken testified.

Based upon Dr. Brubakken's testimony that the records he considered showed Plaintiff's functioning to be borderline, and his overall functioning appeared to be worsening, ALJ Dethloff ordered a consultative psychological examination, which Dr. Richard Palmer performed on October 23, 2003. Tr. 506-12. A supplemental hearing was held on January 26, 2004. Plaintiff's concurrent applications were denied by ALJ Dethloff. Tr. 25-37. Plaintiff filed an appeal to the Appeals Council, which declined review, leaving ALJ Dethloff's decision as the final decision of the Commissioner. Plaintiff filed a timely complaint seeking judicial review of the Commissioner's final decision.

## II.  THE PARTIES' POSITIONS

Plaintiff alleges that ALJ Dethloff erred by failing to find that plaintiff's left-hand impairment and depression/adjustment disorder were "severe impairments" at step 2; failing to properly consider the medical testimony in assessing Plaintiff's mental impairments; failing to properly consider the credibility of Plaintiff and his mother; failing to consider all of the evidence of record in determining Plaintiff's RFC; and failing to include all of Plaintiff's impairments in the hypothetical posed to the VE, resulting in the erroneous conclusion that Plaintiff could perform his past relevant work as a dishwasher and other work existing in the national economy. The Commissioner contends that the ALJ properly evaluated the law and evidence, and his decision is supported by substantial evidence.

## III.   STANDARD OF REVIEW

REPORT AND RECOMMENDATION - 2

This Court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Substantial evidence means more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. To determine whether substantial evidence supports the ALJ's decision, we must consider the evidence as a whole, weighing both evidence that supports, and evidence that detracts from the ALJ's conclusion. *Id*. The ALJ is responsible for determining credibility, resolving conflicts in the testimony, and resolving ambiguities. *Id*. Where evidence is susceptible of more than one rational interpretation, it is the ALJ's decision that must be upheld. *Id*.

## IV. THE SEQUENTIAL EVALUATIONS PROCESS

The Social Security regulations set forth a five-step sequential evaluation process for determining whether a claimant is disabled under the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R § 416.920. At step one, the claimant must establish that he is not engaging in any substantial gainful activity. Id. At step two, the claimant must demonstrate that he has one or more severe impairments. *Id*. At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. *Id*. At step four, if the claimant's impairment(s) neither meets nor equals one of the listed impairments, the Commissioner will then evaluate the claimant's residual functional capacity and past relevant work. If claimant is not able to perform his past relevant work, the burden shifts to the Commissioner at step five to identify jobs existing in significant numbers in the national economy that the claimant can perform given her residual functional capacity, age, education, and

//

REPORT AND RECOMMENDATION - 3

work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If a claimant is determined to be disabled at any stage of the process, there is no need to consider subsequent steps. *Id*. at 1099.

## V. SUMMARY OF THE RECORD

Plaintiff James Crofton was 31 years old on the alleged disability onset date, and 41 when the ALJ issued the decision. Plaintiff testified that he completed the seventh grade. He has done past work as a dishwasher, donut fryer, and laborer. Tr. 561, 135, 140, 506. Plaintiff reported that as a child, he suffered a BB shot in his left hand which was never removed. While working, the BB shattered into fragments, causing pain in his left hand to become worse, and forcing him to stop working. Tr. 562-63. Plaintiff testified that in February 2003, he suffered a seizure and fell, hitting his head. He claims that since then he has had memory problems which caused forgetfulness (Tr. 563, 578, 565, 568-69), short temper (Tr. 572-73), and social isolation  Tr. 569, 570, 576.

### The ALJ's Decision

The ALJ found at step one that the Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of December 31, 1993. Tr. 30, Finding 2. At step two, the ALJ found that Plaintiff's severe impairments included borderline intellectual functioning and a personality disorder. Tr. 30-21, 36, Finding 3. The ALJ found that Plaintiff's seizure disorder, left hand problems and affective disorder (major depression or adjustment disorder) were not severe impairments. Tr. 31-32. At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 36, Finding 4. The ALJ determined that Plaintiff had the RFC to perform all exertional levels of work, with limitations for simple, repetitive tasks with no hazards and no close personal interactions. Tr. 37, Findings 6, 7. At step four, the ALJ found that Plaintiff was able to perform his past relevant work as a dishwasher. Tr. 36, Findings 8, 9. At step 5, the ALJ determined that Plaintiff could also  perform work as a night cleaner and a

REPORT AND RECOMMENDATION - 4

groundskeeper. Tr. 36. The ALJ found Plaintiff not disabled at any time through the date of his decision. Tr. 36, Finding 10.

## VI. DISCUSSION

### A. Evaluation of Plaintiff's Credibility

The Plaintiff challenges the ALJ's determination that his testimony was not fully credible, arguing that there is no evidence of malingering and the record of Plaintiff's pain and impairments is supported by objective evidence. Tr. 34. Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. *Morgan v. Commissioner of SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

An ALJ may not base his determination of Plaintiff's credibility solely on a lack of objective evidence, although it is a factor to consider. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). However, when combined with other evidence contained in the record, the ALJ may draw adverse inferences as to Plaintiff's credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001). An ALJ may also consider a claimant's work history in determining credibility. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).

In discrediting Plaintiff's subjective complaints, the ALJ found that Plaintiff's "degree of alleged physical and mental dysfunction is not supported by the medical record". Tr. 35. The ALJ arrived at this conclusion by adopting the testimony of medical expert Norman Gustavson, Ph.D. Dr. Gustavson testified that Plaintiff's "pattern of avoidance, exaggeration of problems and his self-image as a "victim" were symptoms of his personality disorder. Tr. 609. Dr. Gustavson identified Plaintiff's exaggeration as "a method used by the claimant to get out of doing things." Tr. 609-610.

The ALJ referred to Plaintiff's own words, found in Dr. Rowe's report, to show he is avoiding work. Tr. 35. For instance, the Plaintiff told Dr. Rowe that it was his lack of a GED

REPORT AND RECOMMENDATION - 5

certificate and his incomplete education that was the impediment to his employment.  Tr. 428-430.  However, the information from Judy Bortz of Skill Source indicates that Plaintiff avoided the completion of his requirements for a GED.  Tr. 202-203.  Moreover, the ALJ found that Plaintiff had a spotty work record, a pattern of avoidance, and a tendency to exaggerate the extent of his limitations.  Tr. 35, 203, 609.  Although Plaintiff alleged his impairments precluded all work, Plaintiff had only one seizure in adulthood, and his depressive symptoms improved with Paxil.  Tr. 370, 382, 488.  Therefore, I conclude that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony on disability.

### B.    Evaluation of Lay Testimony

Plaintiff alleges that the ALJ improperly rejected the testimony of Plaintiff's mother, Nancy Reynaga.  An ALJ must consider a lay witnesses' observations of how the claimant's impairment affects his ability to work.  20 C.F.R. § 404.1513(e)(2); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  The ALJ may reject the testimony of a lay witness by providing legitimate, germane reasons.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

At the hearing, Ms. Reynaga testified that her son had" memory problems, was nervous and irritable."  Tr. 584, 86,89.  She reported that his hands welled so that he was unable to use it, and had difficulty focusing."  *Id*.  She also reported that the Plaintiff forgot simple things, and had difficulty staying focused.  *Id*.  In her written statement, Ms. Reynaga described her son as a nervous person, very easily upset, who had difficulty sleeping, a short attention span and a poor memory.  Tr. 166.  She stated that he cooks, "does all his household chores, takes care of his two children, and participates in school and church activities."  Tr. 168.  She indicated that his nervousness and upset had increased.  Tr. 170.

The ALJ found that Ms. Reynaga's written statement was inconsistent with the degree of dysfunction alleged by the claimant, and that Ms. Reynaga's testimony about her son's symptoms did

REPORT AND RECOMMENDATION - 6

not provide objective findings to establish his level of impairment. The ALJ partially rejected the testimony of Ms. Reynaga because she "was merely reciting what [Plaintiff] had told her." Tr. 35.

However, Ms. Reynaga's testimony appears credible. The record shows that Ms. Reynaga lived with the Plaintiff and had the opportunity to observe him on a regular basis. Her testimony and daily activities questionnaire describe what she personally observed of Plaintiff's symptoms and impairments. Additionally, the pain and swelling in Plaintiff's hand is documented in the medical record. Furthermore, Ms. Reynaga's statement that the Plaintiff cooks, and does household chores is consistent with Plaintiff's daily activities questionnaire. Tr. 172. Moreover, there is no basis for the ALJ's conclusory statement that Plaintiff manipulated his mother to support his allegations of disability. Tr. 35.

In light of these facts, I conclude that the ALJ failed to give germane reasons for discrediting Ms. Reynaga's testimony. Consequently, her testimony should be credited as true. *Schneider v. Commissioner of the Social Security Administration*, 223 F.3d 968 (9th Cir. 2005).

    C.    The ALJ's Step Two Analysis

Plaintiff argues that the ALJ improperly determined that his left-hand impairment and depression/adjustment disorder were not severe impairments. Under step two of the sequential analysis, an impairment is determined to be medically severe unless the impairment is only "a slight abnormality with no more than minimal effect on the ability to do basic work activities." 20 CFR §§ 404.1523 and 416.923; s*ee also* SSR 85-28, 1985 WL 56856 at *3 (1985); *Yuckert v. Bowen*, 841 F.3d 303, 306 (9th Cir. 1988) (*adopting* SSR 85-28).

    1.    Left Hand Impairment

Plaintiff argues that the ALJ improperly overlooked the medical reports of Dr. Anderson, Dr. Dahl, Dr. Kaster and Dr. Michael J. Abbot, which, if considered, would support a finding that Plaintiff's left hand impairment met the *de minimis* requirement at step two. The medical evidence of Plaintiff's left hand impairment includes x-ray results showing foreign bodies in Plaintiff's hand (Tr.

REPORT AND RECOMMENDATION - 7

32, Ex. 13F-48; 23F-3, 8 and 23-F-14, 23F-28), and Plaintiff's history of a ganglion cyst. Tr. 32, Ex. 25F-2, Ex. 19F.

On March 20, 2000, Dr. Anderson found that Plaintiff had full range of motion, but flexion of his fingers caused pain and limited his grip strength. He stated that Plaintiff was "left with a permanent restriction to avoid forceful or repetitive gripping, hammering or motion with his left hand." Tr. 290-294. On April 20, 2000, Dr. Dahl noted "mild tenderness in the palm with deep palpation and full range of all [Plaintiff's] fingers". Tr. 292. He recommended that Plaintiff find "some other slightly less strenuous form of work . . . as opposed to heavy manual labor" because there "would be a tendency for these symptoms to recur should Plaintiff continue with his current occupational status." Tr. 292

On September 21, 2002, Dr. Kaster diagnosed probable dorsal tendonitis of the left hand, and noted symptoms of hand swelling and tenderness which was exacerbated "significantly by flexion of the wrist and extension at the wrist". Tr. 443. On October 9, 2002, Dr. Abbot assessed Plaintiff's left hand and wrist pain. Plaintiff reported that every time he does manual labor, the pain flared up. Tr. 440. Dr. Abbott limited Plaintiff to lifting no more than five pounds with his left hand due to pain caused by manual labor. Tr. 440.

Relying on a medical opinion finding no objective evidence of disability [1], the ALJ stated: "the hand problems have not been shown to affect the claimant's ability to perform work-related activities." Tr. 32. The ALJ also stated that Dr. Wilhelm expressed a willingness to allow Plaintiff to return to work. Tr. 501. For these reasons, the ALJ concluded that "[t]he claimant has failed to establish that the history of foreign bodies in his left hand or the history of a ganglion cyst is a severe impairment." Tr. 32. However, the ALJ's decision does not demonstrate whether he considered the

---

[1] The ALJ attributed this opinion to Dr. Wilhelm when in fact the notation was made by Dr. Thompson, who stated that Plaintiff had been recently seen in the orthopedic clinic, and [the clinic] found no objective evidence of disability. Tr. 500.

REPORT AND RECOMMENDATION - 8

reports of doctors Anderson, Dahl, Kaster, and Abbott regarding Plaintiff's left hand impairment, pain symptoms and resulting functional limitations identified by them. Rather the ALJ reasoned that in light of Plaintiff's daily activities, Plaintiff's hand problems "have not been shown to affect the claimant's ability to perform work-related activities." The ALJ's conclusion was in error when considered along with lay testimony that is being credited as true.

### 2. Evaluation of Evidence of Plaintiff's Mental Impairment

Plaintiff argues that the ALJ erred in determining that Plaintiff's affective/adjustment disorder was not severe, and by according greater weight to the opinion of a non-examining medical expert than to Plaintiff's examining physicians.[2]

The opinions of treating and examining sources are given greater weight than the opinions of non-examining sources. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In order to reject the medical opinions of an examining or treating doctor, the ALJ must give specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). A doctor's ultimate conclusions on disability may only be rejected for clear and convincing reasons. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The report of a non-treating, non-examining physician, combined with the ALJ's own observations of the claimant's demeanor at the hearing, without more, does not constitute substantial evidence. *Lester v. Chater*, 81 F.3d at 831. The opinion of a non-examining testifying ME may serve as substantial evidence when supported by other consistent evidence in the record. *Andrews*, 53 F.3d 1035 at 1041.

Consultative examiner Thomas Rowe evaluated Plaintiff in June 2001, and diagnosed an affective/adjustment disorder with anxious and depressed mood, borderline intellectual functioning, and a GAF of 50. Tr. 426-30. On July 10, 2001, State Agency Consultant Dr. Michael Brown,

---

[2] The ALJ disputes both the existence of a major depressive disorder/adjustment disorder, and its severity, stating: "a diagnosis of a major depressive disorder/adjustment disorder has not been established by the claimant." Tr. 33.

REPORT AND RECOMMENDATION - 9

Ph.D. diagnosed Plaintiff with an affective/adjustment disorder with depression and borderline intellectual functioning. Tr. 308. On October 23, 2003, examining physician Richard Palmer diagnosed Plaintiff with major depressive disorder (moderate), borderline intellectual functioning, and a GAF of 45. Tr. 510. The opinions of Rowe and Brown appear to corroborate Dr. Palmer's diagnosis of depression.

Dr. Gustavson testified as a medical expert, stating that "the record has a lot to support a diagnosis of dependent personality disorder and perhaps avoidant or personality disorder NOS with dependent and avoidant features."[3] Tr. 602-03. In adopting Gustavson's testimony, the ALJ stated,

> "Dr. Gustavson's conclusion is given greater weight than the conclusions from Dr. Palmer and Dr. Rowe concerning a depressive/adjustment disorder. The medical expert has had the advantage of viewing all of the medical evidence. Dr. Palmer and Dr. Rowe only had access to medical reports available at the time of their evaluations. Thus, Dr. Gustavson has based his conclusion on the entire evidentiary record while the other doctors formed their opinions on only a portion of the medical evidence." Tr. 32-33.

The ALJ also stated,

> "Furthermore, the medical findings associated with the diagnosis of a '"depressive disorder"' are unimpressive. Dr. Rowe based the diagnosis of (sic) the claimant's reported history of depression. Thus, the claimant's allegations were simply turned into a diagnosis . . . And Dr. Palmer's conclusion is also based on minimal objective findings. In fact, much of Dr. Palmer's report is simply a recitation of the claimant's complaints. . ." Tr. 33.

While the ALJ cited specific objective findings made by Dr. Palmer, the Plaintiff responds that the ALJ overlooked evidence that was not based on Plaintiff's self-reporting; specifically, Dr. Rowe observed that Plaintiff "evidenced some mild dysphoria and anxiety." Tr. 429. Dr. Palmer's observations that Plaintiff's energy level generally appeared somewhat low, that Plaintiff's affect was fairly constricted, that Plaintiff had a distinctly flat and depressed quality, that Plaintiff never laughed and seldom smiled, that Plaintiff's eye contact was minimal, that Plaintiff did not appear especially

---

[3]Dr. Gustavson concluded that the claimant's statements regarding his limitations "are subjective report," and evidence was lacking "that the claimant's condition got markedly worse after this falling down episode." Tr. 606, 608.

REPORT AND RECOMMENDATION - 10

involved, interested or very interactive, and that Plaintiff's memory problems were evident demonstrate to this Court that these depressive symptoms are not based merely on self-reporting. Plaintiff's Opening Brief at 21; Tr. 507. Thus, the ALJ did not give legitimate reasons for accepting the testimony of Dr. Gustavson over Plaintiff's examining physicians as to the *existence* of a major depressive disorder or adjustment disorder. Consistent evidence of depression in this record includes the opinion of Dr. Richard Washburn, who made an Axis I diagnosis of major depression, an Axis II diagnosis of personality disorder NOS, and assigned a GAF of 55.[4] Tr. 549. It also includes Plaintiff's treatment by Sarah Wilhelm, M.D. for mood swings, memory loss and insomnia with depression. Tr. 476. Accordingly, I conclude that the ALJ erred in determining that Plaintiff did not suffer from an adjustment/depressive disorder.

D. <u>The ALJ's Step Three Determination</u>

Plaintiff argues that the ALJ erred in determining that Plaintiff's combined impairments did not meet or equal the Listing of Impairments. As stated above, the ALJ erred in concluding that Plaintiff did not suffer from an affective/adjustment disorder. Upon remand, the ALJ shall consider Plaintiff's left-hand impairment, borderline intellectual functioning and affective/adjustment disorder in determining whether Plaintiff's combined impairments meets or equal the Listings of Impairments.

E. <u>The ALJ's Step Four Determination</u>

Plaintiff also argues that the ALJ erred in his RFC assessment by failing to adopt the functional limitations as found by Dr. Brown, and by Dr. Palmer in his psychological evaluation. The Defendant claims that the ALJ properly framed the hypothetical and found Plaintiff not disabled at step five.[5] Defendant's Brief at 2.

---

[4] Washburn also diagnosed amnestic disorder NOS, generalized anxiety disorder, panic disorder without agoraphobia and Learning disorder, NOS on Axis I, and an Axis III seizure disorder.

[5] The step four inquiry as to whether a claimant may perform past relevant work does not require the use of vocational testimony. *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).

REPORT AND RECOMMENDATION - 11

Residual Functional Capacity is defined as the most that an individual can do in spite of his physical and/or mental limitations that affect the ability to perform work-related tasks. *See* 20 CFR §§ 404.1545 and 416.945, SSR 96-8p available at 1996 WL 374184. In view of this court's conclusions above regarding the ALJ's errors at step two and three, the Plaintiff's RFC will be need to be determined anew on remand.

### VII. CONCLUSION

The Commissioner's decision is not based on substantial evidence. Based on the foregoing, the undersigned recommends that the Commissioner's decision be REVERSED and this matter REMANDED for further proceedings. A proposed Order accompanies this Report and Recommendation.

DATED this 26th day of January, 2006.

/s/ M. Benton
_____
MONICA J. BENTON
United States Magistrate Judge

---

Nonetheless, a vocational expert testified at the supplemental hearing.

REPORT AND RECOMMENDATION - 12